IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
HARLEYSVILLE LAKE STATES      )
INSURANCE COMPANY, as         )
subrogee of 325 UNION, LLC,   )
                              )
            Plaintiff,        )
    v.                        )  No. 14 C 747
                              )
SUPERIOR ONE ELECTRIC, INC.   )
and SCHNEIDER ELECTRIC USA,   )
INC.,                         )
                              )
            Defendants.       )
```

MEMORANDUM OPINION AND ORDER

On August 14, 2010, a fire broke out and activated the sprinkler system at a high-rise apartment building being renovated in Chicago's West Loop neighborhood. Harleysville Lake States Insurance Company ("Harleysville") paid almost $250,000 to the building's owner for fire and water damage.

The fire allegedly started because the building's electrical subcontractor, Superior One Electric, Inc. ("Superior One"), was negligent in the way it installed a high voltage power distributor manufactured by Schneider Electric USA, Inc. ("Schneider"). In addition to bringing a negligence claim against Superior One, Harleysville has sued Schneider for negligence, strict products liability, and breach of warranty. Superior One has also filed strict products liability cross-

1

claims against Schneider and a counterclaim for spoliation of evidence.

Before me are (1) Schneider's motions to dismiss Harleysville's negligence and products liability claims and the corresponding cross-claims and (2) Harleysville's motion to dismiss the spoliation of evidence counterclaim. For the reasons stated below, I grant all three motions to dismiss, but without prejudice to Superior One renewing its spoliation argument in a motion for sanctions at the appropriate time.

I.

At the motion to dismiss stage, I must accept the factual allegations in Harleysville's complaint as true and draw all reasonable inferences in its favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The fire at issue in this case occurred at Trio Tower on August 14, 2010. The building's owner hired ALKO Construction & Development, Inc. ("ALKO") to be the general contractor for the renovation project. Exhibit C to the contract listed seventy subcontractors that ALKO intended to hire, the type of work each subcontractor would perform, and a cost estimate.

As contemplated in Exhibit C, ALKO subcontracted with Superior One to perform electrical work. Superior One, in turn, purchased a piece of power distribution equipment called a busway from Schneider. The busway arrived onsite in several

sections that needed to be joined together using Visi-Tite bolts.

Superior One installed the busway using written instructions provided by Schneider.  During installation, however, Superior One did not securely fasten a portion of the busway that passed through a mechanical room on the Trio Tower's fifth floor.  The busway eventually overheated and caused a fire, which activated the building's sprinkler system and caused water damage.  All told, Harleysville paid almost $250,000 to the Trio Tower's owner for fire and water damage.

Suing as the subrogee of its insured, Harleysville alleges that Superior One was negligent in its installation of the busway (Count I).  Harleysville also alleges that Schneider failed to provide adequate assembly instructions and safety warnings for the busway, which gives rise to negligence (Count II) and strict liability (Count III) claims.  Finally, Harleysville accuses Schneider of breaching implied warranties of safety, merchantability, and fitness (Count IV).

Superior One has filed a counterclaim accusing Harleysville of failing to safeguard key physical evidence and cross-claims seeking to hold Schneider strictly liable for manufacturing or design defects (Cross-Claim I) and inadequate assembly instructions and safety warnings (Cross-Claim II).

3

II.

Schneider argues that both of Harleysville's failure to warn claims (Counts II and III) and the strict liability cross-claims fail as a matter of law because they seek to recover in tort for economic losses that are the domain of contract law.

In *Moorman Manufacturing Company v. National Tank Company*, 435 N.E.2d 443 (Ill. 1982), the Illinois Supreme Court held that the purchaser of an allegedly defective product cannot sue in tort to recover for economic losses, defined as "'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property.'" *Id*. at 449 (quoting Note, Economic Loss in Products Liability Jurisprudent, 66 Colum. L. Rev. 917, 918 (1966)). "[T]he essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or [other] property." *Id*. at 448. When an allegedly defective product causes neither personal injury nor damage to other property, contract law "provides the appropriate set of rules for recovery." *Id*. at 451.

Harleysville argues that the *Moorman* doctrine does not bar its tort claims against Schneider for two reasons: (1) the

doctrine only applies to tort claims alleging that a product had internal defects as opposed to inadequate instructions or warnings and (2) even if the doctrine applies, Counts II and III fall within the *Moorman* doctrine exception for sudden and dangerous occurrences that damage property other than the defective product itself.

A.

Harleysville's first argument that the *Moorman* doctrine does not apply to failure to warn claims has no merit. One of the recognized exceptions to the *Moorman* doctrine is for tort plaintiffs whose losses "are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997) (citing *Moorman*, 435 N.E.2d at 452). There would be no need for such an exception if failure to warn claims never fell within the *Moorman* doctrine's scope. The case upon which Harleysville relies, *Seegers Grain Co. v. U.S. Steel Corp.*, 577 N.E.2d 1364 (Ill. App. Ct. 1991), is not to the contrary. *Seegers* reversed the dismissal of a failure to warn claim, but did not limit the *Moorman* doctrine's application to tort claims alleging design or manufacturing defects. *Id*. at 1374.

5

On the merits, Harleysville has not even attempted to show that its failure to warn claims fall within the *Moorman* doctrine exception for negligent misrepresentations and omissions. The focus of that exception "is whether the defendant is in the business of supplying information for the guidance of others, or whether the information that is supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter." *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997). Nothing in the complaint suggests that Schneider was in the business of supplying information except in connection with the sale of tangible products like busways. It follows that Harleysville's failure to warn claims against Schneider do not qualify for the negligent misrepresentation exception. *See Anderson Electric v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) (affirming dismissal of negligence claim against manufacturer that was not alleged to be in the business of supplying information except in connection with the sale of goods).

B.

Harleysville's fallback argument is that its failure to warn claims qualify for a different exception to the *Moorman* doctrine for property damage caused by a "sudden or dangerous occurrence" like a fire. *In re Chicago Flood Litig.*, 680 N.E.2d at 275. "However, for the exception to apply based upon

6

property damage, the property damaged must be property other than the allegedly defective product itself." *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 924 N.E.2d 1231, 1243 (Ill. App. Ct. 2010) (citing *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 54-55 (Ill. 1997)). "[W]hen the [allegedly defective] product damages itself only, the risks against which products liability law was designed to protect simply are not realized." *Trans States Airlines*, 682 N.E.2d 54.

The parties have taken opposing positions on whether Harleysville's complaint describes a scenario in which an allegedly defective product damaged only itself or damaged other property. I need not decide that issue because even if Harleysville is right that the busway was a separately bargained for product that damaged other property in the building, *Trans States Airlines* holds that "the economic loss doctrine should bar tort recovery when a defective product causes the type of damage [to other property] one would reasonably expect as a direct consequence of the failure of the defective product." 682 N.E.2d at 58. The rationale for this rule is that when a product will foreseeably damage other property if it turns out to be defective, the parties "could have bargained in consideration of such risks" and do not need the protections of tort law. *Id.* (citing *Hartford Fire Ins. Co. v. Huls America, Inc.*, 893 F. Supp. 465, 469 (E.D. Pa. 1995)).

7

Illinois courts and the Seventh Circuit have routinely held that building owners may not recover in tort for property damage foreseeably caused by a defective product. *See Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 327 (Ill. 1982) (economic loss doctrine barred homeowner from suing in tort for property damage foreseeably caused by placement of wall in loose soil without adequate support); *Washington Courte Condominium Assoc.-Four v. Washington-Golf Corp.*, 501 N.E.2d 1290, 1293-94 (Ill. App. Ct. 1986) (economic loss doctrine barred condo owners from suing in tort for damage to "insulation, walls, ceiling, floors, and electrical outlets" foreseeably caused by defective windows and sliding glass doors); *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 782 F.2d 723, 729 (7th Cir. 1986) (economic loss doctrine barred building owner from suing in tort for water damage foreseeably caused by defective roofing material). The principle uniting these cases is that "[i]ncidental property damage...will not take a commercial dispute outside the economic loss doctrine." *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575-76 (7th Cir. 1990) (economic loss doctrine barred building owner from suing in tort for water damage foreseeably caused by defective walls).

Harleysville's tort claims against Schneider fall squarely within this line of cases barring tort claims for incidental property damage caused by an allegedly defective product.

Harleysville seeks to recover for water and fire damage caused by a busway that was insecurely fastened. *See* Am. Compl. at ¶¶ 15-17. Just as defective roofing material foreseeably causes water damage, *see Chicago Heights Venture*, 782 F.2d at 729, so too does improper installation of a high voltage busway foreseeably cause fire and water damage. That type of incidental property damage is not recoverable in tort regardless of whether Harleysville or its insured negotiated for contractual protections against such a foreseeable risk. *See Anderson Elec.*, 503 N.E.2d at 249 (economic loss doctrine applies even when plaintiff is unable "to recover under an action in contract").

In sum, the economic loss doctrine bars Harleysville's tort claims because they seek to recover for incidental and foreseeable property damage caused by Schneider's allegedly defective product. Schneider also relies on the economic loss doctrine in its motion to dismiss Superior One's cross-claims for strict products liability. Superior One never responded to that motion, which I construe as an admission that the cross-claims stand or fall with Harleysville's tort claims. I have already explained why Counts II and III fail, so there is no need for further explanation about why the *Moorman* doctrine also bars Superior One's cross-claims.

III.

Superior One, which faces a claim for negligent installation of the busway, has filed a counterclaim against Harleysville for spoliation of evidence--namely, two Visi-Tite bolts that Superior One allegedly failed to fasten securely. Those bolts were photographed after the fire, but later went missing.

"Under Illinois law, spoliation of evidence is a form of negligence." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). "Accordingly, a plaintiff claiming spoliation of evidence must prove that: (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Id*. (citing, *inter alia*, *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995)).

Harleysville has moved to dismiss the spoliation of evidence counterclaim on the grounds that Superior One has not adequately alleged duty or breach. Superior One counters that its spoliation claim is a defense against liability rather than an affirmative negligence claim for which duty, breach, causation, and damages are required elements. To illustrate the

defensive rather than offensive purpose of its spoliation counterclaim, Superior One cited *Allstate Insurance Co. v. Sunbeam Corp.*, 53 F.3d 804 (7th Cir. 1995). In that case, Allstate sued the manufacturer of an allegedly defective gas grill that burned down an insured's home. *Id*. at 805. Shortly after the fire, Allstate decided to retain only the grill's main fuel system and discarded other physical evidence, including a second propane tank that the homeowners said was empty and stored at a distance from the grill. *Id*. at 805-6. During litigation, the grill manufacturer moved for sanctions on the ground that Allstate had destroyed evidence that might have supported an alternative explanation for the fire--negligent storage of an over-filled propane tank near an operating gas grill--that would have defeated the products liability claim. *Id*. at 806-7. The Seventh Circuit held that Allstate breached its duty to preserve evidence in a way that prejudiced the manufacturer's ability to present a defense. *Id*. at 807. Therefore, the district court did not err in dismissing Allstate's products liability claims as a sanction for spoliation of evidence.

Superior One's reliance on *Allstate* shows that it should assert its spoliation theory as a basis for sanctions rather than as a counterclaim. Accordingly, I dismiss the counterclaim without prejudice to Superior One renewing its spoliation

argument in a motion for sanctions after discovery is complete on that issue.

IV.

For the reasons stated above, I grant Schneider's motions to dismiss Counts II and III and the corresponding cross-claims. I also grant, without prejudice, Harleysville's motion to dismiss the spoliation counterclaim.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 21, 2015